IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CLARENDON AMERICA INSURANCE COMPANY, <br><br> Plaintiff <br><br> v. <br><br> MARIO'S ROXY, LTD. d/b/a "The Roxy", AUSTIN ENTERTAINMENT GROUP, INC., MARTIMIANO CHAVEZ and ANTONIA MENDOZA, Individually and as Representatives of the Estate of ALDO CRISTIAN CHAVEZ, Deceased, and as Next Friend of MARTIN CHAVEZ, JR. a Minor, and TRIANGLE ENTERTAINMENT, INC., <br> Defendants. | § § § § § § § § § § § § § § § § § § § § § § § |

C.A. NO. H-06-1693

## MEMORANDUM AND ORDER

### I. INTRODUCTION

Plaintiff Clarendon America Insurance Company ("Clarendon") has filed a Motion for Summary Judgment seeking declaratory relief against each of the Defendants. In particular, Clarendon asks the Court to find and hold that, under the insurance policy Clarendon issued to Triangle Entertainment, Inc. ("Triangle"), Clarendon has no duty to defend or indemnify anyone for claims asserted by Defendants Martimiano Chavez and Antonia Mendoza (the "State Court Plaintiffs") in a lawsuit filed by them in Harris County state court (the "State Court Case").

The State Court Case was brought against related entities Mario's Roxy, Ltd. d/b/a "The Roxy," Austin Entertainment Group, Inc., and Triangle Entertainment, Inc. (the "State Court

-1-

Defendants"), seeking recovery for the shooting and death of Aldo Cristian Chavez. The State Court Defendants have filed a response to Clarendon's Motion for Summary Judgment, and have filed their own Cross-Motion for Summary Judgment asking the Court to declare, as a matter of law, that Clarendon does have a duty to defend in the State Court Case, and that Clarendon's duty to indemnify cannot be determined until after the State Court Case is resolved. The State Court Defendants also object to the admission of certain pleadings from the State Court Case.

## II. THE EIGHT CORNERS RULE

The issues to be resolved in this proceeding all relate to the application of the so-called "eight corners" or "complaint allegation" rule. *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.,* 198 F.3d 548, 551 (5th Cir. 2000). Specifically, and subject to qualifications and exceptions that will be discussed, the Court must consider whether the allegations found within the four corners of the petition in the State Court Case are covered within the four corners of the insurance policy that Clarendon issued. *Guideone Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305 (Tex. 2006).

## III. UNDISPUTED FACTS

Clarendon issued to Triangle an insurance policy (the "Policy") with a policy period that included all of the material events alleged in the State Court Case. The Policy contained an endorsement that excluded any coverage of claims arising from "actual or alleged '**assault**' and/or '**battery**.'"

Under the eight corners rule, the allegations in the State Court Case are of critical importance, and must be considered in detail. In the Original Petition, the State Court Plaintiffs alleged that a

social club known as The Roxy advertised a teen night to be held on July 26, 2004. The Roxy is owned or operated by the State Court Defendants. The Original Petition also alleged that "Plaintiff Martimiano Chavez relinquished care, custody, and control of his children Decedent Aldo Cristian Chavez, a minor age 15, and Martin Chavez, Jr., a minor age 14, as well as two of their friends, also minors, to the Defendants . . . ". Around 10:30 p.m., a fight broke out at the club. The fight was not started by any of the State Court Plaintiffs or anyone related to or connected with them, but Martin Chavez, Jr. was nonetheless assaulted and battered.

Further, Martin Chavez, Jr., Aldo Cristian Chavez, and other minors were ejected from Roxy's and went in search of a pay telephone so they could request a ride home. The State Court Plaintiffs allege that the State Court Defendants were negligent in ejecting these minors late at night, in a commercial area, without any supervision or means of transportation or communication. While the minors were looking for a telephone, several of the Roxy patrons who were involved in the fight sped by in a pickup and opened fire with a handgun. Aldo Cristian Chavez was struck in the leg. Martin Chavez, Jr. lifted his brother and tried to carry him to safety. Additional shots were fired, however, and one struck Aldo in the back. Although conscious for some time after the shooting, he soon died in his brother's arms. Plaintiff Antonia Mendoza is the mother of the decedent.

The Original Petition went on to state that the State Court Plaintiffs, on behalf of Martin Chavez, Jr., seek to recover for the mental anguish and emotional distress suffered by him as a bystander in the shooting death. The First Amended Petition contained very similar allegations. The Second Amended Petition, however, was, in important respects, different from its two predecessors. Unlike the previous two petitions, there was no reference to the assault and battery on Martin. And, instead of describing the shooting of Aldo, this Petition alleges that "serious harm did come to

Decedent ALDO CHAVEZ. This harm eventually led to his death." Still, under the "Damages" section of the Petition, the State Court Plaintiffs did repeat the language from the previous two Petitions concerning "mental anguish and emotional distress suffered by minor Plaintiff as a bystander to the shooting death of his brother, Decedent ALDO CRISTIAN CHAVEZ."

The Third Amended Petition omitted all references to shooting and to assault and battery. In the claim for bystander damages, the Petition alleges that the State Court Plaintiffs on behalf of Martin "seek to recover for the mental anguish and emotional distress suffered by minor Plaintiff as a bystander forced to witness the death of his brother, Decedent ALDO CRISTIAN CHAVEZ."

### IV. THE AMENDED PETITIONS AND THE EIGHT CORNERS RULE

The various petitions in the State Court Case raise a critical issue as to the eight corners rule. Traditionally, the only pleadings from an underlying lawsuit that are considered in a case, such as this one, over insurance coverage are the "live" pleadings, i.e., those that are current and have not been amended or withdrawn. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 194 (5th Cir. 1998) (as "an amended pleading completely supersedes prior pleadings . . . the duty to defend rests on the most recent pleadings."). The parties expend substantial effort arguing whether this Court can properly consider any of the petitions that preceded the Third Amended Petition. The State Court Plaintiffs even object to the admission into evidence of any of the earlier petitions.

The question becomes: Should this Court limit itself to examination of the Third Amended Petition, which says nothing about assault, battery, or shooting; or should it look to the prior pleadings that very specifically do refer to shooting and, in the first two petitions, also refer to assault and battery?

## V. SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could enter a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Id.* at 255.

## VI. TEXAS SUBSTANTIVE LAW APPLIES

Jurisdiction in this Court is based on diversity. 28 U.S.C. § 1332. Accordingly, Texas substantive law applies. *Cleere Drilling Co. v. Dominion Exploration & Prod., Inc.*, 351 F.3d 642, 646 (5th Cir. 2003). Under Texas law, an insurer's duty to defend may be broader than the duty to indemnify. *Northfield Ins. Co. v. Loving Home Care*, 363 F.3d 523, 527-28 (5th Cir. 2004) (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)); *State Farm Lloyds v. Borum*, 53 S.W.3d 877, 889 (Tex. App. 2001).

## VII. INSURER'S DUTY TO DEFEND

Generally, facts developed in litigation or resolved by decision do not affect an insurer's duty to defend. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 829 (Tex. 1997). The duty to defend usually arises when the facts alleged in the complaint or petition, if taken as true, would

potentially state a cause of action falling with the terms of the policy. *Northfield*, 363 F.3d at 528 (citing *Canutillo Ind. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir. 1996)).

The insured carries the initial burden of establishing that a claim against it is potentially within the insurance policy's coverage. *Id.* The carrier is obligated to defend the insured provided that the petition or complaint alleges at least one cause of action potentially within the policy's coverage. *Id.* The focus of the inquiry is on the alleged facts, not on the asserted legal theories. *Northfield*, 363 F.3d at 528 (citing *St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.-Tex.*, 249 F.3d 389, 392 (5th Cir. 2001)). After the insured meets its burden to show that the allegations state a potential claim, the insurer then has the burden to show that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of the claims. *Northfield*, 363 F.3d at 528; *see also Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 931 (Tex. App. 2007) (citing *Venture Encoding Serv., Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App. 2003)). Normally, any ambiguity in a policy's limitations and exceptions is construed strictly against the insurer. *Northfield*, 363 F.3d at 528 (citing *Canutillo*, 99 F.3d at 701); *Guaranty Nat'l Ins. Co. v. Azrock Indus., Inc.*, 211 F.3d 239, 243 (5th Cir. 2000). "If any allegation in the complaint is even potentially covered by the policy then the insurer has a duty to defend its insured." *Ensearch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1492 (5th Cir. 1992); *Terra Int'l, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 271-72 (Tex. App. 1992) (observing that courts are to "liberally construe the allegations in the third-party complaint to determine if they fall within the provisions of the insurance policies," and "[i]f there is any doubt about whether the allegations reflect a potential liability, such doubt must be resolved in favor of the Insured"). If there is no ambiguity and the terms in question are susceptible to only one interpretation, however, then the rule of construction favoring

the insured does not come into play. *Nat'l Union Fire Ins. Co. of Pittsburgh P.A. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tex. 1995).

## VIII. WHETHER EARLIER PETITIONS CAN BE CONSIDERED

In *Guideone*, the Supreme Court of Texas recently grappled with the question of when extrinsic evidence can be considered in determining whether an insurance company is required to defend a policy holder. An insurance company sought a declaratory judgment that it had no duty to defend or indemnify an insured church in an underlying sexual misconduct lawsuit since extrinsic evidence showed that the offending employee had ceased work before the policy took effect. The Supreme Court held that the extrinsic evidence could not be considered.

The Court's analysis began with a summary of the eight corners rule. It noted that "[r]esort to evidence outside the four corners of these two documents is generally prohibited." *Guideone*, 197 S.W.3d at 307. The Court went on to say that:

> [a]lthough this Court has never expressly recognized an exception to the eight-corners rule, other courts have. Generally, these courts have drawn a very narrow exception, permitting the use of extrinsic evidence only when relevant to an independent and discrete coverage issue, not touching on the merits of the underlying third-party claim. Recently, the Fifth Circuit observed that if this Court were to recognize an exception to the eight-corners rule, it would likely do so under similar circumstances, such as 'when it is literally impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.' *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004).

*Id.* at 308. In an accompanying footnote, the Court listed and briefly described – without apparent disapproval – federal and state court cases in which courts had looked at extrinsic evidence.

Nonetheless, the Court disallowed the extrinsic evidence in *Guideone* because the evidence in question "is relevant both to coverage and the merits and thus does not fit the above exception to the rule." *Id.* at 309. The Court rejected the argument that the exception should be expanded to allow mixed or overlapping extrinsic evidence and noted that the Fifth Circuit had done the same in *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 367 (5th Cir. 1993). *Id.*

Clarendon prefers to rely on the decision in *Western Heritage Ins. Co. v. River Entm't*, 998 F.2d 311 (5th Cir. 1993). An insurance company in that case sought a declaratory judgment that it owed no duty to defend an establishment that served alcoholic beverages when it was sued by alleged victims of a patron who had been allowed to drive away while intoxicated, because the insurance policy excluded liability for alcohol-related occurrences. The original complaint had specifically referred to the patron's inebriation, while an amended complaint omitted that fact. The Fifth Circuit held that the trial court was correct in considering extrinsic evidence (in the form of the original complaint) to find that there was no duty to defend. It found that reliance on extrinsic evidence was proper when the live pleading "does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy . . . ". *Id.* at 315. Clarendon argues that *Western Heritage* dictates the outcome in this case. The State Court Defendants argue that it can no longer be treated as authoritative precedent because of intervening decisions by the Supreme Court of Texas.

The Fifth Circuit's more recent decision in *Northfield* is instructive on this point. In that case an insurer for a business of "nanny" services sought a declaration that it was not obligated to defend its insured in a suit brought by parents of a child who died in a nanny's care. The nanny had subsequently been convicted of first degree felony injury to the child. The underlying suit, for which

the insurer sought a declaration of no duty to defend, had originally made reference to the nanny's conviction and the intentional nature of her behavior. An amended petition deleted all such references. The exclusions in the insurance policy excluded, among other things, coverage for liability arising from criminal acts. The Court of Appeals held that "[t]he duty to defend is determined by consulting the latest amended pleading." *Northfield*, 363 F.3d at 528. The Court argued that the distinguishing feature of *Western Heritage* was that "the petition did not factually explain at all how the patron involved had arrived at such an impaired state . . .". *Id.* at 533 n.6. In *Northfield*, by contrast, the Court said that the live pleading did explain what had caused the child's death. *Id.*

As the State Court Case underlying the instant proceeding has developed, a different legal issue has presented itself. The State Court Plaintiffs and Defendants now jointly argue that all of the allegations previously made as to any assault and battery are no longer supportable. Specifically, they claim that no evidence has been found to support the allegation that Martin Chavez, Jr. was assaulted or battered at The Roxy. They further claim that no evidence can be found to support the allegation that the fatal shooting was an assault or battery, as opposed to an accident. Indeed, they have uncovered no evidence as to who fired the shots or whether those individuals had previously been at The Roxy. Accordingly, they aver that the "live pleading rule" is controlling: insurers should not be allowed to decline to defend based on pleadings that all parties to the underlying case currently disavow.

This circumstance distinguishes the present case from *Western Heritage*. The Fifth Circuit did not there suggest that the changes from the earlier pleadings to the live pleading were a result of a better or clearer understanding of the evidence. Rather, the changes appeared to be designed solely to obtain insurance coverage.

In this instance, the Court is not ready to conclude that the changes from the earlier petitions to the current one were made without *any* consideration of insurance coverage. Nonetheless, the Court is unwilling to grant Clarendon's requested summary judgment on the basis of allegations that have been withdrawn and may prove groundless. Clarendon's Motion for Summary Judgment is **DENIED**. Summary judgment is **GRANTED** to the State Court Defendants to the extent that Clarendon is found and held to have a duty to defend the State Court Case. The issue of whether Clarendon has a duty to indemnify will be deferred until, at the earliest, the resolution of the State Court Case. The State Court Plaintiffs' objection to the admission of pleadings from the State Court Case is **OVERRULED**.

**IT IS SO ORDERED**.

Signed at Houston, Texas on this __17ᵗʰ__ day of August 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE